**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
District Judge S. Kato Crews

Civil Action No. 1:25-cv-00608-SKC-SBP

JESUS RONQUILLO,

Plaintiff,

v.

JARED POLIS, MOSES ANDRE STANCIL, ALISON TALLEY, AMANDA RETTING, CHRIS LOBANOV-ROSTOVSKY, SHANE STUCKER, JAMES BAILEY, and SHANNON FOLZ,

Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants James Bailey, Moses "Andre" Stancil, Alison Talley, Amanda Retting, Shane Stucker, and Shannon Folz's (collectively, "CDOC Defendants" or "Defendants") Motion to Dismiss Second Amended Complaint (Dkt. 50) ("Motion to Dismiss" or "Motion"). Plaintiff Jesus Ronquillo filed a response, Dkt. 56, and Defendants filed a reply, Dkt. 59. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States. The Court has reviewed the briefing, the evidence, the relevant law, and the entire case file. No hearing is necessary. For the following reasons, Defendants' Motion is **GRANTED**.

## BACKGROUND

Plaintiff is currently incarcerated at the Fremont Correctional Facility in Cañon City, Colorado, where he is serving a 24-year determinate sentence for sex crimes against a child. Dkt. 50-1; Dkt. 38, p.8.[1] Plaintiff's parole eligibility date was October 17, 2017. Dkt. 56, p.3 Following his conviction, Plaintiff was seen by a psychosexual evaluator employed by the Colorado Department of Corrections ("CDOC"). Dkt. 38, p.8. The evaluator referred Plaintiff to the Sex Offender Treatment and Monitoring Program ("SOTMP"), *id.*, the purpose of which is to "provide specialized sex offense specific treatment to identified offenders to reduce recidivism and enhance public safety by providing a continuum of identification, treatment, and monitoring services throughout incarceration."[2] CDOC Administrative Regulation 700-19(I) (2025). To that end, SOTMP "provides comprehensive assessment, evaluation, treatment, and monitoring services to sexual offenders who are motivated to eliminate sexual abuse behaviors." *Id.* 700-19(IV)(H).

[1] For purposes of this Order, the Court cites Plaintiff's Second Amended Complaint (Dkt. 38) using the pagination generated automatically by the CM/ECF System, which differs from Plaintiff's written pagination.

[2] The Court takes judicial notice of certain information on CDOC's website, including the content of CDOC's Administrative Regulations. *See Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 183-84 (10th Cir. 2025) (noting that, on a motion to dismiss, the district court may "take judicial notice of public information that is not reasonably subject to dispute"); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (noting "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web").

Plaintiff counts himself among those offenders motivated to eliminate sexual abuse behaviors; however, he asserts that CDOC has continually denied him access to SOTMP. Dkt. 38, ¶ 22. Plaintiff insists that he must complete treatment to be considered eligible for parole and, as a result, that the denial of treatment violates his rights to procedural and substantive due process under the Fourteenth Amendment. *Id.* ¶¶ 53-67. Plaintiff further maintains that treatment is necessary to alleviate the symptoms of his psychological condition and that denying him treatment violates his right to be free from cruel and unusual punishment under the Eighth Amendment. *Id.* ¶¶ 68-75.

On February 24, 2025, Plaintiff initiated this action, naming several CDOC officials as defendants. Dkt. 1. In the operative pleading (Dkt. 38) ("Second Amended Complaint" or "SAC"), Plaintiff brings both individual and official capacity constitutional claims against Governor Jared Polis and seven CDOC officials, including CDOC Executive Director Moses Stancil, Fremont Correctional Facility Warden Shane Stucker, and members and administrators associated with CDOC's Sex Offender Treatment and Monitoring Program (collectively, "CDOC Defendants").[3] Dkt. 38, pp.2-4. Specifically, Plaintiff alleges that Defendants, by

[3] Plaintiff also names Chris Lobanov-Rostovsky, head of the Colorado Sex Offender Management Board. Dkt. 38, p.4. Neither Governor Polis nor Mr. Lobanov-Rostovsky are parties to the instant Motion (*see* Dkt. 50, p.1), and it is not clear whether they have yet been served. However, the Court's forthcoming analysis regarding Plaintiff's claims largely turns on legal questions that apply equally to Mr. Lobanov-Rostovsky and Governor Polis. The Court has an obligation under Fed. R. Civ. P. 1 to ensure the just, speedy, and efficient resolution of each case before it, and therefore, concludes

denying him access to sex offender treatment, have violated his rights to procedural and substantive due process and his right to be free from cruel and unusual punishment. *Id.* ¶¶ 53-75.

On December 17, 2025, the CDOC Defendants filed the instant Motion to Dismiss, arguing that Plaintiff has failed to state a constitutional claim against them and that they are entitled to qualified immunity.[4] Dkt. 50, pp.4-16. Plaintiff responds that he has adequately pled his claims and that the CDOC Defendants are not entitled to qualified immunity. Dkt. 56, pp.6-21.[5]

## LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the *Twombly-Iqbal* pleading standard, the Court takes a two-prong approach to evaluating the

---

that the claims against Governor Polis and Mr. Lobanov-Rostovsky should nevertheless be dismissed. Should Plaintiff file a Third Amended Complaint naming them again, the Court will order service to be effected.

[4] The CDOC Defendants also argue that Plaintiff's official capacity claims, to the extent they seek damages, are barred by the Eleventh Amendment to the U.S. Constitution. *Id.* at pp.4-5. However, on November 11, 2025, Plaintiff moved to voluntarily dismiss his "Claim Three for Damages Against Defendants in Their Official Capacities." Dkt. 43. The Court grants that motion as part of this Order. However, to the extent Plaintiff seeks damages under his first two claims, the Court agrees with the CDOC Defendants that those claims are barred by the Eleventh Amendment. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996).

[5] The Court cites Plaintiff's response using the CM/ECF pagination, which differs from Plaintiff's written pagination.

sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the Court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the Court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible when the allegations, taken as true, "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard requires more than the sheer possibility a defendant has acted unlawfully. *Id.* If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,1252 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a

liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"When a § 1983 defendant asserts qualified immunity, this affirmative defense creates a presumption that [the defendant is] immune from suit." *Vette v. Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted) (alteration in original) (internal quotation marks omitted). "To overcome this presumption, the plaintiff must show that (1) the officers' alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1178 (10th Cir. 2020) (citation omitted). The plaintiff bears the burden of showing facts and law to establish the inference the defendant violated a clearly established federal constitutional or

statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry ends. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong — whether the right was clearly established — must be considered "in light of the specific context of the case, not as a broad general proposition." *Id.* An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

## ANALYSIS

The CDOC Defendants assert that Plaintiff has failed to state a procedural due process claim because (1) he lacks a liberty interest in accessing SOTMP; (2) he fails to state a substantive due process claim because he does not allege any conscience-shocking conduct; (3) he fails to state an Eighth Amendment claim because he alleges neither substantial harm nor deliberate indifference; and (4) they are entitled to qualified immunity because Plaintiff fails to allege a constitutional injury,

Defendants did not violate any clearly established law, and Plaintiff fails to allege their personal participation. Dkt. 50, pp.4-16. The Court analyzes each of Plaintiff's claims in turn, assessing first whether Plaintiff has stated a plausible claim for a constitutional injury and, second, whether the CDOC Defendants are entitled to qualified immunity in their individual capacities.

## I. Procedural & Substantive Due Process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause "confers both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

"To assess whether an individual was denied procedural due process, 'courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'" *Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 862 (10th Cir.1995) (quoting *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir.1994)); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

As the U.S. Supreme Court noted in *Sandin v. Conner*, however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." 515 U.S. 472, 485 (1995). Accordingly, the Tenth Circuit has endorsed the Supreme Court's view, announced in *Sandin*, that courts "are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'" *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999). In determining whether a condition of confinement constitutes an atypical, significant deprivation, courts consider "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . .; and (4) the placement is indeterminate." *Est. of DiMarco v. Wyo. Dep't of Corrs.*, 473 F.3d 1334, 1342 (10th Cir. 2008).

"There is no dispute that there is no federally created liberty interest in access to sex-offender treatment." *Lerner v. Stancil*, No. 22-cv-00888-NYW-NRN, 2023 WL 3595998, at *5 (D. Colo. May 23, 2023). But "state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994) (quoting *Vitek v. Jones*, 445 U.S. 480, 488 (1980)); *accord Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (noting liberty interests "may arise from an expectation or

interest created by state laws or policies"). Nonetheless, a party claiming a cognizable liberty interest in something "must have more than an abstract need or desire for it" or "a unilateral expectation of it"; "[h]e must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Even prison regulations that guarantee certain treatment, conditions, or processes do not necessarily create constitutionally protected liberty interests." *Gowadia v. Stearns*, 596 F. App'x 667, 672 (10th Cir. 2014).

"[A] state parole statute can create a liberty interest when the statute's language and structure sufficiently limits the discretion of a parole board." *Boutwell v. Keating*, 399 F.3d 1203, 1213 (10th Cir. 2005); *see Bd. of Pardons v. Allen*, 482 U.S. 369, 378-79 (1987) (holding mandatory language requiring release when certain predicates were met "create[d] a presumption that parole release will be granted"); *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (holding mandatory language requiring release unless any of four exceptions were met created presumption of release); *cf. Jago v. Van Curen*, 454 U.S. 14, 20 (1981) (finding no liberty interest where parole decisions lay "wholly within the discretion of" the parole board).

**A. Constitutional Violation**

Defendants argue Plaintiff has failed to state a procedural due process claim because he does not have a cognizable liberty interest in accessing SOTMP. Dkt. 50, pp.5-8. He lacks such an interest, Defendants argue, because he received a

determinate sentence, which means that he is not required to complete SOTMP to be eligible for parole. *Id.* at pp.6-8. In response, Plaintiff concedes that he is not obligated to complete SOTMP as part of his custodial sentence. Dkt. 56, p.13. However, he argues that, in functional terms, his ability to access SOTMP "is the single determining factor which decides if parole is available to him." *Id.* at p.15. Moreover, Plaintiff contends that the Sex Offender Management Board Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders ("SOMB Guidelines"), which guide parole decisions for sex offenders, meaningfully constrain the parole board's discretion such that they create a liberty interest. *Id.* at pp.15-16.

First, turning to the SOMB Guidelines on which Plaintiff relies, it is clear those provisions do not limit the parole board's discretion to such a degree as to create a presumption of release. Two U.S. Supreme Court cases—*Allen* and *Greenholtz*—illustrate the degree of limitation that can give rise to a cognizable liberty interest. *Allen* involved a Montana statute which provided that the state parole board "*shall* release on parole . . . any person confined in the Montana state prison . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." 482 U.S. at 376 (quoting Mont. Code § 46-23-201 (1985)). The use of the mandatory "shall" gave rise to "'a presumption that parole release will be granted' when the designated findings are made." *Id.* at 377-78. Similarly, *Greenholtz* involved a statute providing that the Nebraska state

parole board "shall order [an inmate's] release unless it is of the opinion that his release should be deferred because" one of four conditions had been met. 442 U.S. at 11. The Court "accept[ed] respondents' view that the expectancy of release provided in th[e] statute [wa]s entitled to some measure of constitutional protection." *Id.* at 12. But it "emphasize[d] that this statute ha[d] unique structure and language[,] and thus[,] whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." *Id.*

In contrast to the mandatory language in the above examples, the language Plaintiff cites is suggestive at best. The SOMB Guidelines, by their own terms, are "designed to *inform* the Parole Board" and "may be considered as *a component* in the decision-making process of the Parole Board among other components considered." SOMB Guidelines, p.368 (emphasis added).[6] Moreover, the plain text of the SOMB Guidelines does not support Plaintiff's claim that "[i]f [a prisoner] doesn't win the SOTMP lottery and does not receive SOTMP, he will not be eligible for consideration for parole." Dkt. 56, p.15. The SOMB Guidelines state that if an inmate is "[o]n the wait list for treatment" and is not designated a sexually violent predator, has no prior history of sex crime conviction or parole revocation, and has not refused or failed

[6] The court may take judicial notice of CDOC's administrative regulations and guidelines. *See City of Wichita, Kan. v. United States Gypsum Co.,* 72 F.3d 1491, 1496 (10th Cir. 1996) (finding administrative regulations subject to judicial notice); *Ray v. Aztec Well Service Co.,* 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations); *Antonelli v. Ralston,* 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement).

treatment prior, then the SOMB will make "[n]o objection to [a] recommendation for discretionary parole." SOMB Guidelines, p.368. Thus, even assuming this language was binding on the parole board, which it is not, an entire class of offenders—those who are awaiting treatment and do not meet any one of the four disqualifying criteria—is eligible for parole without completing SOTMP. Thus, nothing in the SOMB Guidelines Plaintiff cites appreciably limits the parole board's discretion or creates a presumption of release.

Further, the facts of this case are inapposite to those cases in this District finding that indeterminately sentenced offenders have a liberty interest in access to SOTMP. As Plaintiff himself notes, those cases involved offenders sentenced under the Colorado Sex Offender Lifetime Supervision Act of 1998 ("SOLSA"), Colo. Rev. Stat. §§ 18-1.3-1101 to 1012, which "mandates sex-offender treatment," thus creating a "'legitimate claim of entitlement' to that treatment to SOLSA inmates." *Lerner v. Stancil*, 2023 WL 3595998, at *8; *see also Beebe v. Heil*, 333 F. Supp. 2d 1011, 1016 (D. Colo. 2004) ("In the case at hand, Plaintiff's claim of a liberty interest is predicated on the mandatory language of the statue which requires the state to provide convicted sex offenders with treatment during their imprisonment."); *Allen v. Clements*, 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013) ("SOLSA creates a liberty interest in treatment because it both mandates treatment and conditions parole on progressing successfully through treatment."). Plaintiff, in contrast, was not sentenced under SOLSA. Rather, as Plaintiff readily admits, he was given a determinate sentence

under Colorado's generally applicable sentencing criteria. Dkt. 56, p.13. Thus, Plaintiff "remains eligible for parole regardless of his participation in sex offender treatment." *Crosby v. Heil*, No. 10-cv-00951-WJM-MEH, 2011 WL 7485387, at *17 (D. Colo. Oct. 3, 2011). This Court agrees with the other courts in this District that have found no liberty interest in treatment for offenders with determinate sentences. *See, e.g.*, *Crosby*, 2011 WL 7485387, at *17; *Helm v. Colorado*, No. 06-cv-00624-PSF-CBS, 2007 WL 322770, at *4 (D. Colo. Jan. 31, 2007) ("Because sex offender treatment is neither statutorily mandated under the 1968 Act nor a prerequisite to eligibility for parole, Helm's reliance on *Beebe* is misplaced, and he has failed to allege the deprivation of a cognizable liberty interest."); *Edwards v. Zavaras*, No. 11-cv-00918-LTB-MEH, 2011 WL 8609629, at *9 (D. Colo. Oct. 19, 2011) ("[H]ere, it is undisputed that Plaintiff not only was not convicted under the 1998 version of the SOLSA, but he was not convicted under the SOLSA at all. . . . Therefore, there is no indication that Plaintiff's placement in and treatment under the SOTMP is mandatory."), *report and recommendation adopted*, 2012 WL 3245404 (Aug. 8, 2012). Accordingly, Plaintiff has failed to plausibly allege the existence of a cognizable liberty interest in access to SOTMP prior to his release on parole.

And Plaintiff's substantive due process claim, which is based on the same alleged treatment deprivation as his procedural due process claim, fails as a matter of law. *See* Dkt. 38, ¶¶ 53-67. It is well established that "substantive due process does not provide additional protections" when "it would be duplicative of other

constitutional claims in [a] lawsuit." *Walker v. Sherbarth*, No. 15-cv-00823-MJW, 2015 WL 5697366, at *4 (D. Colo. Sep. 29, 2015) (citing *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1129 (D. Colo. 2014)). "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Based on the foregoing authorities, procedural due process is the proper vehicle for analyzing claims of entitlement to sex offender treatment. Thus, Plaintiff's vague entreaty to apply the "more generalized notion of substantive due process" must fail. *See id.*

**B. Qualified Immunity**

Defendants additionally seek dismissal of Plaintiff's individual capacity procedural due process claims with prejudice based on qualified immunity. Dkt. 50, pp.14-16. As noted previously, Plaintiff has failed to state a procedural or substantive due process claim. Accordingly, Defendants are entitled to qualified immunity on that basis. *Surat v. Klamser*, 52 F.4th 1261, 1271 (10th Cir. 2022) (noting that a plaintiff must "demonstrate . . . that the official violated a statutory or constitutional right" to overcome a claim of qualified immunity); *Parker v. Ritter*, No. 08-cv-00737-MSK-KLM, 2010 WL 1286081, at *4 (D. Colo. Mar. 25, 2010) ("Because the 12(b)(6) standard is used to evaluate the violation prong of the qualified immunity analysis, these two arguments collapse into a single analysis.").

But Defendants assert two additional grounds for qualified immunity—first, they argue Plaintiff has failed to adequately allege Defendants' personal participation in his alleged constitutional deprivation, and second, they deny their conduct violated any clearly established law.[7] Dkt. 50, p.15. Plaintiff does not clearly respond to these arguments as applied to his due process claims. *See* Dkt. 56, pp.11-12. However, affording "[a] liberal construction [to] [Plaintiff's] pro se argument," *Smith v. Cody*, No. 95-6418, 1996 WL 422042, at *1 (10th Cir. July 29, 1996), and considering the sweeping language used in Plaintiff's response, *see* Dkt. 56, p.11 (asserting the "clearly establishe[d]" principle that "prison officials may not intentionally deny or delay access to medical care"), the Court interprets Plaintiff's arguments as asserting that his due process right to access SOTMP was clearly established and that he has adequately alleged the Defendants' personal participation. *See id.* at pp.11-12.

The Tenth Circuit has noted that personal participation has become a protean element in the qualified immunity analysis, "sometimes analyze[d] . . . as part of the inquiry into prong one of qualified immunity" and other times "as an antecedent question." *Wilson v. Stoltenberg*, 182 F.4th 903, 918 n.15 (10th Cir. 2026). However, "no matter where the inquiry is situated," the Court's concern is whether the Second Amended Complaint "sufficiently states the [Defendants] personally participated in

---

[7] Because the U.S. Supreme Court has recognized "the importance of resolving immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), and in light of the parties' fulsome briefing of the qualified immunity issue, the Court will consider each of Defendants' bases for asserting qualified immunity.

the [constitutional] violation alleged." *Id.* To meet this requirement, "liability [must] be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Stepp v. Lockhart*, 168 F.4th 1286, 1300 (10th Cir. 2026) (alteration in original) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013)).

Turning to the Second Amended Complaint, the Court agrees with Defendants that Plaintiff has failed to adequately allege their personal participation in his claimed constitutional injury. The Second Amended Complaint offers little to no detail regarding each Defendant's "own individual actions," *id.*, nor does it connect those actions to Plaintiff's alleged constitutional injury, *see generally* Dkt. 38. Rather, Plaintiff offers only vague and conclusory allegations that Defendants, by virtue of their positions, are responsible for his injury. For example, Plaintiff alleges that he "has been blocked by the Defendants from accessing telehealth treatment" and that "Defendants have caused the Plaintiff to suffer a grievous loss by denying him sufficient process." *Id.* ¶¶ 58, 60. But Plaintiff gives no indication of how Defendants "blocked" his access to telehealth or how their conduct caused his "loss" of process. *See id.* Although a plaintiff may allege personal participation via an official's role in enacting or maintaining policy, *Stepp*, 168 F.4th at 1306-07, this demands more than simply alleging that "CDOC official policy [is] under the direct control of these Defendants." Dkt. 38, ¶ 21. Plaintiff's factual allegations do not so much as name the individual Defendants, let alone allege that each Defendant had a role in enacting, maintaining, or enforcing CDOC policy. *See Stepp*, 168 F.4th at 1306-07 (finding

personal participation adequately alleged where parent plaintiffs "identified each [defendant] by name and alleged that each was 'responsible for the governance and administration'" of the local school system, and "that they 'adopt[ed], implement[ed], and enforc[ed] a policy of segregation based on sex" (last three alterations in original)). "[F]ail[ing] to implicate the individual [D]efendants" in Plaintiff's injury is inadequate to satisfy his burden, *id.* at 1304, and Defendants are entitled to qualified immunity on this ground as well.

Finally, the Court agrees with Defendants that Plaintiff has failed to show the violation of a clearly established law. For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018). Here, the Court finds that the weight of authority supports the conclusion that Defendants' conduct was constitutionally firm. *See Helm*, 2007 WL 322770, at *3 (finding no liberty interest where "sex offender treatment [was] neither statutorily mandated . . . nor a prerequisite to eligibility for parole"), *aff'd*, 244 F. App'x 856 (10th Cir. 2007). Plaintiff offers no authority to the contrary. Accordingly, the CDOC Defendants are entitled to qualified immunity on the grounds that their conduct did not violate a clearly

established law, and Plaintiff's individual capacity due process claims against the CDOC Defendants are dismissed with prejudice.[8]

## II. Eighth Amendment

Defendants assert that Plaintiff has failed to plausibly allege an Eighth Amendment claim based on CDOC's failure to provide him with sex offender treatment. Dkt. 50, pp.11-14. Specifically, they argue that Plaintiff has failed to plausibly allege he has suffered or will suffer substantial harm because of the alleged deprivation or that CDOC officials have acted with deliberate indifference toward such harm. *Id.* Plaintiff contends that he has adequately pled his claim. Dkt. 56, pp.6-10.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To invoke the Eighth Amendment's protection, two conditions must be met: "the deprivation alleged must be, objectively, 'sufficiently serious,'" and the responsible official must have the requisite state of mind—"'deliberate indifference' to inmate health or safety." *Id.* at

[8] Dismissal of individual capacity claims on qualified immunity grounds is properly done with prejudice. *See Clark v. Wilson,* 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to grant defendants' motion to dismiss based on qualified immunity "with prejudice"); *Vreeland v. Wren*, 702 F. App'x 676, 680 (10th Cir. 2017) (agreeing with magistrate judge's determination that "claims should be dismissed with prejudice based on qualified immunity").

834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). These are known as the objective and subjective prongs.

There is "[n]o static 'test'" for determining whether a punishment is sufficiently serious, but possible examples include punishments that "involve the unnecessary and wanton infliction of pain," "are grossly disproportionate to the severity of the crime," or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).

States generally have a constitutional duty to provide necessary medical care to their inmates, which includes psychological or psychiatric care. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). "When prison officials are deliberately indifferent to an inmate's serious medical needs, they violate the inmate's right to be free from cruel and unusual punishment." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A medical need is considered sufficiently serious to satisfy the objective prong if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014). To satisfy the objective prong, a plaintiff bringing a delay-in-treatment claim also "must allege that the delay has caused or will cause 'substantial harm,' such as 'lifelong handicap, permanent loss, or considerable pain.'" *Diaz v. Lampela*, 601 F. App'x 670, 674 (10th Cir. 2015) (quoting *Al-Turki*, 762 F.3d at 1193).

### A. Constitutional Injury

Plaintiff insists that he has adequately pled the objective component of his Eighth Amendment claim, pointing to allegations that "his mental health needs result in symptoms that are 'actual physical pain and distress' and are a 'form of torture if untreated.'" Dkt. 56, p.6; *see also* Dkt. 38, ¶ 38. Defendants respond that Plaintiff has only alleged that these types of symptoms may affect sex offenders, generally, and he "does not specifically allege that *he* has experienced any particular symptoms." Dkt. 59, pp.7-8 (emphasis in original).

The Court agrees with Defendants. Plaintiff includes no specific factual allegations that would indicate that his inability to access SOTMP "has caused or will cause" such harm as "lifelong handicap, permanent loss, or considerable pain." *Diaz*, 601 F. App'x at 674. The claims that Plaintiff cites are generalizations, referring to untreated sex offenders writ large. *See* Dkt. 38, ¶¶ 37-38. The only specific claims Plaintiff makes regarding his own condition is that he "suffers with . . . depression, anxiety, physical pains, etc." *Id.* ¶ 75. But nonspecific allegations of psychological symptoms or physical pains "do not amount to the basis for a constitutional claim." *See Riddle*, 83 F.3d at 1204 (finding sex offender's "allegations of eroded self-esteem, apathy, fear and feelings of differentness" insufficient). Further, Plaintiff's offer to provide an affidavit "outling [sic] the lurid details of his unique set of symptoms" is inadequate to remedy the facial deficiencies in the Second Amended Complaint. Dkt. 38, ¶ 40. "While plaintiffs' pro se pleadings are to be construed liberally and held to

a less stringent standard than formal pleadings drafted by lawyers, plaintiffs must nonetheless set forth sufficient facts to support their claims." *Diaz v. Paul J. Kennedy L. Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110-12 (10th Cir. 1991)). Given that Plaintiff has failed to plausibly allege that the delay in treatment caused him substantial harm, he necessarily fails to set forth sufficient facts to satisfy the objective prong of his Eighth Amendment claim.

Defendants also argue that Plaintiff fails to adequately plead the subjective prong of his Eighth Amendment claim because he does not allege any facts creating an "affirmative link" between the conduct of any Defendant and his alleged deprivation. Dkt. 50, p.13-14. The Court agrees. In fact, the Tenth Circuit has declared itself unpersuaded that "the alleged lack of response to" sex offenders' demands for treatment "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Riddle*, 83 F.3d at 1204 (citing *Estelle*, 429 U.S. at 104). Moreover, to plausibly allege deliberate indifference, a plaintiff must plead facts showing that the relevant official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Here, Plaintiff fails to offer even a single factual allegation indicating that any individual Defendant so much as knew of Plaintiff's purported deprivation, much less purposefully disregarded it. *See generally* Dkt. 38. Plaintiff's sweeping generalizations and vague allegations that CDOC policy is "under the direct control of these Defendants" and, as result,

Defendants "have knowingly, unreasonably, willfully and wantonly denied care to prisoners in their custody, especially to Plaintiff," are wholly insufficient to plausibly allege the subjective prong of his Eighth Amendment claim. *See Diaz*, 601 F. App'x at 674 ("vague and conclusory allegation[s] do[] not suffice to state an Eighth Amendment claim"); *see also Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) (allegations of "personal participation in the specific constitutional violation complained of [are] essential" in a § 1983 action). Accordingly, Plaintiff fails to plausibly allege an Eighth Amendment violation.

**B. Qualified Immunity**

Defendants seek dismissal of Plaintiff's individual capacity Eighth Amendment claims with prejudice based on qualified immunity. Dkt. 50, pp.14-16. Specifically, they claim they are entitled to qualified immunity because Plaintiff "does not plausibly allege facts sufficient to give rise to a deliberate indifference claim," thus failing to establish a constitutional injury; Plaintiff fails to allege the Defendants' personal participation in causing his Eighth Amendment injury; and "there are no authorities clearly establishing a determinate-sentenced inmate's right to a sex offender treatment while incarcerated protected by . . . the Eighth Amendment." *Id.* at p.15. Plaintiff responds that he has adequately pled an Eighth Amendment claim and that "[t]he denial of prescribed medical care to a diagnosed prisoner has been clearly established in the Tenth Circuit." Dkt. 56, pp.11-12.

The Court agrees that Plaintiff's failure to allege the Defendants' personal participation in his purported Eighth Amendment injury entitles Defendants to qualified immunity. *See Wilson*, 182 F.4th at 918 n.15 (personal participation is properly considered as an element of the qualified immunity analysis). However, the Court disagrees with Defendants that Plaintiff's failure to state an Eighth Amendment claim automatically entitles them to qualified immunity on the constitutional injury ground, as well. "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citing *Lone Star Indus., Inc. v. Horman Family Tr.*, 960 F.2d 917, 920 (10th Cir. 1992)).

"In reviewing a 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001)). Unlike Plaintiff's due process claim, which failed as a matter of law on the basis that Plaintiff has no liberty interest in accessing treatment prior to parole, Plaintiff's Eighth Amendment claim failed for lack of sufficient factual allegations. The Court cannot say that "it appears beyond doubt" that Plaintiff cannot prove his Eighth Amendment claim. *Currier*, 242 F.3d at 917. Plaintiff may still amend his pleading to offer some factual allegations regarding his symptoms or the conduct of

Defendants that substantiate his claims of deliberate indifference and substantial harm. Accordingly, Defendants are not entitled to qualified immunity on this basis.

But the Court does conclude that Plaintiff has failed to show Defendants violated any clearly established law with respect to Plaintiff's Eighth Amendment claim. Plaintiff insists, however, that this conclusion is incorrect. Specifically, he argues that the Tenth Circuit has clearly established that denying prescribed medical care to a prisoner is unconstitutional. Dkt. 56 at 11. While the Court agrees with this general proposition, "[t]he Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). While a plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, clearly established law must place the constitutional issue "beyond debate." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020). Whether Plaintiff's access to "prescribed medical care" was delayed or denied is much too abstract of a lens for assessing Defendants' conduct. That is because a mere delay in prescribed treatment, on its own, is insufficient to trigger Defendants' constitutional duty to provide Plaintiff with medical care. Rather, for qualified immunity purposes, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

"It has been clearly established in this circuit since at least 2006 that a deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency . . . .'" *See Al-Turki*, 762 F.3d at 1194. Here, the weight of authority is against Plaintiff's claim that his sexual disorder gives rise to symptoms which potentially create a medical emergency. In fact, the Tenth Circuit has on several occasions declined to find that a delay in sex offender treatment could plausibly result in substantial harm. *E.g.*, *Diaz*, 601 F. App'x at 674-75 (Eighth Amendment claim premised on delay in sex offender treatment failed objective prong despite a psychologist's conclusion that plaintiff's condition "require[d] treatment"); *Riddle*, 83 F.3d at 1204 (Eighth Amendment claim premised on delay in sex offender treatment failed the objective prong because plaintiffs failed to allege sufficient facts establishing that sex addiction was "a condition which a lay person would easily recognize as necessitating a doctor's attention"). Plaintiff does not cite any contrary authority, and the Court is aware of none. Accordingly, the CDOC Defendants are entitled to qualified immunity on the basis that their conduct did not violate any clearly established law, and Plaintiff's individual capacity Eighth Amendment claims against the CDOC Defendants are dismissed with prejudice.

* * *

For the reasons shared above, the Court **GRANTS** Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 50). IT IS ORDERED:

1. Plaintiff's Procedural and Substantive Due Process claims are DISMISSED in their entirety **with prejudice**.

2. Plaintiff's Eighth Amendment individual capacity claims are DISMISSED **with prejudice**.

3. Plaintiff's Eighth Amendment official capacity claims are DISMISSED **without prejudice**.

4. The Court GRANTS Plaintiff's Motion to Voluntarily Dismiss the Plaintiff's Claim Three for Damages Against Defendants in Their Official Capacities (Dkt. 43).

5. On or before **October 19, 2026**, Plaintiff may file a Third Amended Complaint regarding his official capacity Eighth Amendment claim that rectifies the deficiencies identified in the foregoing. Should Plaintiff fail to file an amended pleading, judgment shall be entered and this case shall be closed.

DATED: September 21, 2026

BY THE COURT:

S. Kato Crews
United States District Judge